TEXTO COMPLETO DE LA SENTENCIA
Montalvo Collection Agency, Inc. solicita de este Tribunal la revisión de la adjudicación de la Subasta Número 97-09. La referida subasta fue adjudicada a favor de Start I & E Corporation, por la Administración de Terrenos. La recurrente, procedió a solicitar ante la agencia la reconsideración de la determinación tomada, pero la Administración de Terrenos mantuvo la adjudicación.
Inconforme con la decisión, el 23 de enero de 1998, la recurrente solicitó de este Tribunal revisión administrativa. El 23 de febrero de 1998, la recurrente compareció ante nos en auxilio de jurisdicción y este Tribunal emitió resolución el 11 de marzo de 1998, ordenando la paralización del contrato de arrendamiento entre Start I & E Corporation y la Administración de Terrenos y ordenó fuera elevado *971 el expediente administrativo.
El 3 de marzo de 1998, la Administración de Terrenos solicitó la desestimación del recurso por alegada falta de notificación. La recurrente presentó escrito en oposición. En cumplimiento de la orden, la Administración de Terrenos elevó el expediente administrativo. El 31 de marzo de 1998, la Administración de Terrenos sometió su alegato en oposición a la revisión solicitada.
El 13 de abril de 1998, Start I & E Corporation comparece ante nos y solicita la desestimación por no haber sido notificada a pesar de entender ser parte indispensable. El 8 de mayo de 1998, la recurrente compareció en oposición a la solicitud presentada por el licitador agraciado. Luego del estudio y análisis de los documentos sometidos y el derecho aplicable, procedemos a DEVOLVER el expediente a la Administración de Terrenos para que emita una nueva resolución que contenga determinaciones de hecho, conclusiones de derecho y la advertencia a las partes de sus derechos procesales.
I
El 25 de noviembre de 1997, la Administración de Terrenos envió a Montalvo Collection Agency, Inc., (Montalvo), entre otras corporaciones, una invitación para que sometiera su propuesta y participara en la subasta del contrato de arrendamiento de los lotes de terreno número 10 y número 18 destinados a estacionamiento y localizados en la Avenida Chardón en Hato Rey.
El pliego de información, las especificaciones y las condiciones para participar en la subasta, fueron puestas a la disposición de los distintos participantes. Las especificaciones para la participación en la subasta establecían, entre otras cosas, que en el caso en que el licitador fuera una corporación o sociedad sería necesario someter copia del certificado de incorporación, evidenciar las facultades de quién participaría en el proceso de adjudicación y firmar las portadas de los pliegos de la subasta como evidencia de la aceptación de las condiciones de la misma. Fueron fijados como cánones mensuales mínimos aceptables para la participación en la subasta, la cantidad de $3,500.00 por el lote de terreno número 10 y $5,000.00 por el lote de terreno número 18. Además, era condición del canon de arrendamiento que el licitador agraciado efectuara un pago adicional mensual de $127.00 por el lote número 10 y $211.23 por el lote número 18 por concepto de contribuciones territoriales.
Finalmente la subasta 97-09 fue señalada para el 4 de diciembre de 1997. La parte aquí recurrente preparó su propuesta sólo con respecto al lote número 10 y la entregó a la Administración de Terrenos. Además, compareció a la subasta Start I & E Corporation (Start) y también presentó su propuesta. De acuerdo a las propuestas, Montalvo ofreció una suma mayor por el arrendamiento del lote número 10 que Start. La subasta ftie celebrada en la fecha y hora señalada y fue adjudicada a Start. Según la minuta de la subasta, algunos de los licitadores fueron descalificados, entre ellos el aquí recurrente Montalvo, debido a que no firmaron los pliegos de la subasta y en el caso de las corporaciones no incluyeron las resoluciones corporativas.
La Administración de Terrenos envió una escueta comunicación a Montalvo sobre los resultados de la subasta. Tal comunicación lee de la siguiente forma:

"Estimado Señor Montalvo:

La subasta antes relacionada para el arrendamiento de los lotes número "10" y "18" en Hato Rey, no fue asignada a la Compañía que usted representa.

Agradecemos su participación y esperamos contar con ustedes en otra oportunidad.

Cordialmente,

Manuel Reyes Vázquez

Subdirector Ejecutivo "

El 2 de enero de 1997, Montalvo solicitó la reconsideración de la adjudicación de la subasta y alegó que había sido el mejor postor por ofrecer un canon de arrendamiento mayor al ofrecido por Start. El 5 *972 de enero de 1997, la Administración de Terrenos contestó la moción de reconsideración y expresó que la propuesta de Montalvo no fue considerada porque no fue enviado el certificado de incorporación, no fue incluida la resolución corporativa autorizando a la persona que representaría la corporación ni fueron firmados e iniciados los pliegos de la subasta; factores que además del canon ofrecido fueron tomados en cuenta al momento de la adjudicación. Montalvo solicitó a la Administración de Terrenos que le facilitara los nombres y direcciones del licitador agraciado y del resto de los licitadores de la subasta; además solicitó la inspección del expediente de la subasta. La Administración de Terrenos accedió a las solicitudes de Montalvo y permitió la inspección del expediente.
Inconforme Montalvo con la decisión de la agencia, el 23 de enero de 1998, presentó ante este Tribunal una solicitud de revisión administrativa. En su alegato la recurrente sostiene que su propuesta era más beneficiosa para el gobierno que la propuesta de Start, que según recuerda incluyó los documentos requeridos, que aun de no haber incluido los documentos, la propuesta pudo haber sido considerada y señaló ciertas irregularidades durante el proceso. El 23 de febrero presentó apéndice suplementario y presentó, además, una Moción en Auxilio de Jurisdicción en la que sostuvo que ante el inminente otorgamiento del contrato de arrendamiento entre la Administración de Terrenos y Start debía de ser emitida una orden para la paralización de dicho otorgamiento hasta una decisión de este Tribunal.
El 3 de marzo de 1998, la Administración de Terrenos presentó una moción solicitando la desestimación del recurso por alegadameníe no haber sido notificada de la presentación de la revisión administrativa. Esta moción fue acompañada por una declaración jurada suscrita por la supervisora de la oficina de correo de la Administración de Terrenos. El 11 de marzo de 1998, este Tribunal emitió resolución en la que ordenó la paralización de los procedimientos y que en un término de 20 días la Administración de Terrenos elevara el expediente administrativo.
El 20 de marzo de 1998, la Administración de Terrenos compareció en cumplimiento de orden y N elevó el expediente administrativo a este Tribunal. El 23 de marzo de 1998, este Tribunal ordenó a la parte aquí recurrente a que en un término de 10 días presentara su posición respecto a la moción sobre falta de jurisdicción que había sido presentada. El 27 de marzo de 1997, la parte recurrente presentó su oposición a la solicitud de desestimación y alegó que personalmente fue entregada a la señorita Pérez, recepcionista de las oficinas centrales de la Administración de Terrenos, copia de la revisión y copia simple de la moción informativa de la presentación del recurso ante el Tribunal de Circuito de Apelaciones. Acompañó el escrito en oposición con copia de la moción informativa firmada por la señorita Pérez.
El 31 de marzo de 1998, la Administración de Terrenos compareció ante este Tribunal y presentó su alegato en oposición a la revisión administrativa. En el referido escrito la parte recurrida alega que la recurrente no cumplió con ciertos requisitos necesarios para que su propuesta fuera considerada. La recurrida sostiene que Montalvo, a pesar de saber las condiciones de la subasta, no sometió el certificado de incorporación, la resolución corporativa, ni firmó los pliegos de la subasta y que el exigir tales requisitos no era oneroso. Además, señaló que a pesar de que la recurrente alega recordar haber presentado los documentos, los mismos no están en el expediente administrativo y que todas las alegaciones de irregularidades en los procesos tienen el propósito de imputar falsamente que existió fraude.
El 7 de abril de 1998, la Administración de Terrenos compareció ante este Tribunal y sostuvo que la copia de la moción informativa firmada por la señorita Pérez no apareció en los expedientes, que Start tampoco fue notificada y que el alegar que el recurso fue entregado junto con la moción a la señorita Pérez contradice lo que había sido alegado en una moción en la cual Montalvo manifestó que la Administración de Terrenos fue notificada a través de su Director Ejecutivo.
El 13 de abril de 1998, Start compareció y solicitó la desestimación de la revisión por alegada falta de jurisdicción. Start sostiene que nunca fue notificada de la revisión, que es parte indispensable y que de no comparecer podría ser afectado su derecho propietario sin un debido proceso de ley. El 8 de mayo de 1998, la recurrente presentó un escrito en el que alega que la participación de Start no es indispensable para la adjudicación del presente caso debido a que por no haber sido otorgado el contrato de arrendamiento Start no presenta interés propietario alguno.
*973 II
Según expresó el Tribunal Supremo en Rivera Santiago v. Secretario, 119 D.P.R. 265 (1987), "la observancia del debido procedimiento de ley implica que se efectúen determinaciones de hecho y se expresen las razones o fundamentos para la decisión administrativa." Las razones deben ser "suficientes para comunicar a las partes los fundamentos decisorios y permitirles una revisión judicial," Rivera Santiago, supra. Una comunicación pro forma, que sólo informa los resultados del proceso y no especifica las razones de la decisión no satisface el debido proceso de ley.
El propósito principal de que las decisiones finales de la agencia incluyan determinaciones de hecho y conclusiones de derecho es evitar las actuaciones administrativas arbitrarias, caprichosas o discriminatorias.
La Ley Número 170 de agosto 12 de 1988, 3 L.P.R.A. Sección 2164, conocida como Ley de Procedimiento Administrativo Uniforme, establecé que la orden o resolución final de una agencia deberá incluir y exponer separadamente determinaciones de hecho si éstas no han sido renunciadas y conclusiones de derecho que fundamenten la adjudicación. Además, queda establecido por esta ley que la resolución advertirá a las partes el derecho de solicitar la reconsideración o revisión de la misma y los términos correspondientes para ello. Al cumplir estos requisitos los términos dispuestos comenzarán a correr.
La decisión recurrida, según está redactada, nos impide ejercer nuestra función revisora. Al prescindir de fundamentos, no podemos revisar la razonabilidad de la decisión administrativa. La decisión de la Administración de Terrenos fue comunicada a los licitadores no favorecidos a través de una escueta carta. Dicha carta no exponía fundamento alguno que sostuviera la adjudicación de la subasta a Start. Estamos impedidos de determinar si la decisión de la agencia descansa en prueba contenida en el expediente, principio fundamental del derecho administrativo, o si, por el contrario, es una arbitraria y/o caprichosa. Además, al carecer la resolución de fundamentos, las partes no estaban en posición de analizar sus posibilidades en reconsideración o en revisión.
Es importante señalar, también, que la resolución tampoco advirtió a las partes de su derecho a acudir en reconsideración ante la agencia y el término dispuesto para ello, ni tampoco expuso la oportunidad de acudir a los tribunales mediante la presentación oportuna de un recurso de revisión administrativa y el término dispuesto para ello. El hecho de que en este caso la parte estaba representada por un abogado y solicitó los recursos procesales disponibles no justifica el error de la agencia.
Por lo tanto, concluimos que la resolución emitida por la Administración de Terrenos no cumple con los requisitos de ley, lo que atentó contra el derecho que poseen las partes a un debido proceso de ley.
m
Por los fundamentos antes expuestos, procedemos a DEVOLVER el expediente del caso a la agencia para que sea emitida una nueva resolución que contenga determinaciones de hecho, conclusiones de derecho y advierta a las partes de sus derechos de reconsideración y revisión judicial.
Así lo acordó y manda el Tribunal y lo certifica la Señora Secretaria General.
Aida Ileana Oquendo Graulau
Secretaria General